Brendan EGAN, an infant by his parent and natural guardian, James EGAN, and James Egan, individually, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 89 CV 2755.

United States District Court, E.D. New York.

March 9, 1990.

Irwin H. Berson, Brooklyn, N.Y., for plaintiffs.

Andrew J. Maloney, U.S. Atty. (Richard Goldstein, of counsel), Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

On May 22, 1989, plaintiffs brought this action in New York Supreme Court against Brian McFadden, a United States park police officer, alleging that because of his negligence a dog trained, owned and controlled by him bit plaintiff Brendan Egan, an infant, on January 26, 1987. James Egan sued on behalf of his son and himself.

On August 21, 1989 the Assistant United States Attorney, pursuant to 28 U.S.C. § 2679, (a) certified that at the time of the incident McFadden was acting within the scope of his employment, (b) removed the case to this court, and (c) thereby caused the United States to be substituted for McFadden as defendant.

The United States moves to dismiss on the ground that plaintiffs did not file a timely claim against the United States with the appropriate federal agency, namely, the National Park Service. Plaintiffs move to remand to the State court.

### I.

The motions require the court to consider the effects of amendments made to the Federal Tort Claims Act (the Tort Claims Act) by Public Law 100–694, 102 Stat. 4563 (1988), the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the Act), enacted on November 18, 1988, *reprinted in* 1988 U.S.Code Cong. & Admin.News (102 Stat.) 4563.

To put the issues in context requires a somewhat detailed description of the Act.

Section 2 of the Act sets forth Congress's "findings" and "purpose." The findings were, in substance, the following. For some years the Tort Claims Act has made the United States responsible for common law torts of Federal employees acting within the scope of their employment, while the case law has made them generally immune from personal tort liability. But recent judicial decisions, in particular *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), have eroded this immunity. The threat of personal liability will seriously undermine the morale of Federal employees and impede the agencies in carrying out their missions. 102 Stat. 4563.

Section 2(b) declares the purpose of the Act to be "to protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." 102 Stat. 4563, 4564.

The House Committee Report proposing the legislation describes the change made by the *Westfall* case in the law of personal tort liability of Federal employees. *See* H.R. No. 700, 100th Cong., 2d Sess. 2 (1988), *reprinted in* 1988 U.S.Code Cong. & Admin.News 5945, 5946 (the Report). Until that decision the cases generally held them immune if they had acted within the scope of their employment. *Id.* The *Westfall* opinion held that a Federal employee was not immune unless the challenged conduct was "within the outer perimeter of an official's duties and is discretionary in nature." *Westfall, supra,* 484 U.S. at 300, 108 S.Ct. at 585.

The Report concluded that this standard exposed Federal employees to potential personal liability so as to threaten "a substantial diminution in the vigor of Federal law enforcement and implementation." *Report, supra,* at 5947. The Report therefore proposed and Congress adopted the following amendments to that part of the Tort Claims Act codified in 28 U.S.C. § 2679.

The remedy against the United States under the Tort Claims Act for negligent injury by a Federal employee acting within the scope of his office or employment is now "exclusive" of any other civil action for damages against the employee "by reason of the same subject matter." 28 U.S.C. § 2679(b)(1). Moreover, "any other civil action" for damages "arising out of or relating to the same subject matter against the employee" is "precluded," 28 U.S.C. § 2679(b)(1), except actions alleging Constitutional torts or Federal statutory torts otherwise authorized. 28 U.S.C. § 2679(b)(2).

The Act lodged with the Attorney General the determination of whether the employee was acting within the scope of employment. "Upon certification" by the Attorney General that the employee was so acting, an action brought in a Federal District Court "shall be deemed" to be against the United States, which shall be substituted as party defendant. 28 U.S.C. § 2679(d)(1). "[U]pon" such a certification an action brought in a State court "shall" be removed to a Federal District Court, and "for purposes of removal" the certification "conclusively" establishes the scope of office or employment. 28 U.S.C. § 2679(d)(2).

Section 2679(d)(4) provides that the case is then to proceed in the same manner as any action against the United States filed pursuant to 28 U.S.C. § 1346(b) "and shall be subject to the limitations and exceptions applicable to these actions."

Section 1346(b) provides, so far as pertinent, that a Federal district court "shall have exclusive jurisdiction of civil actions on claims against the United States" for damages caused by the negligence of a Federal employee "while acting within the scope of his office or employment" in circumstances where the United States, if a private person, would be liable under local law.

Among the "limitations and exceptions" to an action under that section are those contained in 28 U.S.C. §§ 2401(b) and 2675(a). Section 2401(b) provides, in pertinent part, that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues" or unless action is begun within six months of either denial of the claim or failure of the agency to act on it within six months. Section 2675(a) provides, in substance, that "[a]n action shall not be instituted upon a claim against the United States" for damages due to the negligence of a Federal employee within the scope of employment unless the "claim" is first presented to the appropriate Federal agency and has been denied or has not been acted on within six months. Plaintiffs have to date presented no such claim.

Under the amendments made by the Act, where the United States has been substituted and the action dismissed for failure first to present a claim pursuant to § 2675(a), a claim shall be "deemed" timely presented under § 2401(b) if it would have been timely had it been filed on the date the underlying civil action was commenced and is presented to the agency within 60 days after the dismissal. 28 U.S.C. § 2679(d)(5).

Pursuant to Section 8 the Act takes effect when enacted, that is, on November 18, 1988, and applies to all claims and actions pending on or filed on or after that date. However, that section makes provision in subsection (d) for, among other things, claims, such as the present one, that accrued before enactment. Such a claim shall be deemed to be timely presented under § 2679(d)(5) if presented within the period in which "the claim could have been timely filed under applicable State law" but such period shall not exceed two years from the date of enactment.

Plaintiffs' claim accrued on January 6, 1987, before enactment of the law. They brought suit against McFadden on May 22, 1989, after the enactment. The Assistant United States Attorney, as the authorized designee of the Attorney General, *see* 28 C.F.R. § 15.3, certified that McFadden was acting within the scope of his employment. Under the terms of § 2679 the case was thus removed to this court, and the United States substituted as defendant.

Since plaintiffs never presented any kind of "claim" against the United States to the National Park Police, the United States moves to dismiss under 28 U.S.C. §§ 2401(b) and 2675(a), both described above.

## II.

An initial question is whether the court is bound by the certification of the Attorney General's designee or may determine anew whether the employee was acting within the scope of his employment. The Court of Appeals for the Second Circuit appears not to have considered the issue, and the decisions of other courts are in conflict.

This court has exclusive jurisdiction under 28 U.S.C. § 1346(b) of civil actions on claims "against the United States" for damages for, among other things, personal injury caused by the negligence of a federal employee acting "within the scope of his office or employment" under circumstances where a private person would be liable under the law where the negligence occurred.

As noted above, 28 U.S.C. § 2679(b)(1) now makes this remedy against the United States for such torts "exclusive" of "any other civil action" for damages "by reason of the same subject matter against the employee," and "preclude[s]" "[a]ny other civil action" against the employee for damages "arising out of or relating to the same subject matter," with exceptions not pertinent here.

Thus, under the terms of the statute, if the present action is now properly "against the United States," plaintiffs are "precluded" from pursuing any claim against McFadden for damages "arising out of or relating to" the alleged incident which is the "subject matter" of the claim. In other words, once the event has occurred that makes the case conclusively "against the United States" there can be no remand to allow plaintiffs to litigate a claim against McFadden.

Under the Act that event is the Attorney General's certification. "Upon" that certification the action is transmogrified into one against the United States.

The Act makes no mention of a redetermination by the court of the Attorney General's finding that the employee was acting within the scope of his employment. Nor does the Act make provision for a remand in the event of such a redetermination.

This contrasts with the terms of § 2679 as it stood before the Act was passed. A 1961 amendment to the section, 75 Stat. 539 (1961), provided for the same kind of exclusivity of a suit against the United States. However, this was only in the case of a defendant Federal employee operating a motor vehicle within the scope of his employment. In such a case the Attorney General's certification that the employee was so acting caused removal to the Federal court and the action to be deemed against the United States.

Significantly, however, the 1961 amendment did not make the Attorney General's certification binding on the court. The amendment provided that should the Federal District Court on a motion to remand determine that the case was one in which a remedy was not available against the United States, the case must be remanded to the State court. Thus, if the court found the employee was not acting within scope of employment, the action was to be remanded.

The Act contains no comparable provisions. On the contrary, it provides in § 2679(d)(2) that the "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." This 1988 wording did not limit the purposes of certification to removal. *But see Martin v. Merriday,* 706 F.Supp. 42, 45 (N.D.Ga.1989). It made clear the repeal of the previous provision authorizing the court to redetermine the scope of employment. Where statutory language has repealed a provision authorizing judicial review of the Attorney General's finding in some cases, it would not be intellectually honest to read that language as implying permission for such review in all cases.

■ The wording of the Act therefore appears clearly to preclude a judicial rede-

termination of a finding by the Attorney General's designee that an employee was acting within the scope of his employment. The Act's legislative history reinforces this construction.

The Report on the bill that became the Act says that it requires the United States to be substituted as defendant "whenever the Attorney General determines" the employee was acting within the scope of employment, and makes the availability of this suit against the United States preclusive of "any other civil action or proceeding *of any kind* from being brought against an individual Federal employee or his estate *if such action would sound in common law tort.*" Report, *supra,* at 5949, 5952 (emphasis supplied). Furthermore, the Report states that the reference in § 2679(b)(1) to the action against the United States as the exclusive remedy is intended to substitute it as the sole permissible defendant and to prohibit a suit against the employee even where the United States may not be held liable by reason of the exceptions to the Tort Claims Act set forth in 28 U.S.C. § 2680. *See* Report, *supra,* at 5950. That section provides that the Tort Claims Act and specifically 28 U.S.C. § 1346(b) shall not apply to, for example, any claim arising out of assault, battery, false imprisonment, libel, slander, or deceit.

The Report thus confirms what the language of § 2679(b)(1) suggests, that is, that the Attorney General's certification is the event that in some cases precludes an injured person from pursuing a common law tort action in a State court even though that person can obtain no recovery against the United States.

The Report is cited not to show "legislative intent," i.e., what the members of Congress who adopted the Act had in mind. There is manifestly no such thing. No one knows, or can know, what the mental state of each of the legislators was, or what concerns, important or trivial or perhaps even irrelevant to the announced purpose of the legislation, motivated their votes. Moreover, it is fatuous to suppose that there is a composite group intention of the legislators. *See* Dworkin, *Law's Empire* (1986) 312–337.

But even though formal committee reports proposing legislation do not show the actual "legislative intent," United States courts treat them as significant in construing the legislation. This is a sensible and useful tradition. Such reports are formal parts of the government's legislative process, issued by legislators made responsible by their fellows and announcing measures for public consideration and adoption. In a rational system of representative democracy the legislators and the public are entitled to place some reliance on such official reports as result in legislation. To treat them as important in construing that legislation is but to acknowledge that government should not be seen as saying one thing while doing another. *Id.* at 342–43.

The court must construe the text of the statute, taking into account the setting in which it is passed and in which it is interpreted. If in that setting the text makes clear the legislation's dominant purpose and rejects competing concerns suggesting possible limitations on the expectable effects of implementation of that purpose, a court would be irresponsible to read those limitations into the text.

The court concludes that the language of the Act (a) manifests a policy to relieve Federal employees of concerns about common law tort actions against them where the Attorney General or his designee finds they were acting within the scope of their employment, (b) recognizes that, although in most cases the injured person will have a remedy in the Federal court (and against a solvent defendant), in some instances that person can obtain no relief at all, and (c) prohibits the court both from reviewing the finding of the Attorney General or his designee and from remanding to the State court.

For the foregoing reasons the court holds that it may not redetermine the finding by the Attorney General's designee that McFadden was acting within the scope of his employment or remand the case to the State court.

Some courts have reached a similar result. *E.g., Aviles v. Lutz,* 887 F.2d 1046 (10th Cir.1989); *Arbour v. Jenkins,* 713 F.Supp. 229 (E.D.Mich.1989); *Assaad–Faltas v. Griffin,* 715 F.Supp. 247 (E.D.Ark. 1989); *S.J. and W. Ranch, Inc. v. Lehtinen,* 717 F.Supp. 824 (S.D.Fla.1989). Other opinions have ruled to the contrary. *E.g., Martin v. Merriday, supra,* 706 F.Supp. 42; *Petrousky v. United States,* 1989 WL 53014, 1989 U.S.Dist.Lexis 5355 (N.D.N.Y. May 12, 1989); *cf. Baggio v. Lombardi,* 726 F.Supp. 922 (E.D.N.Y.1989) (United States conceded the issue).

### III.

The question remains whether the Act as construed by the court and as applied to plaintiffs is valid under the Constitution.

■ The Act, while taking away plaintiffs' State law claim against McFadden, has accorded them a remedy against the United States, a defendant presumably more financially responsible than McFadden. It is true that plaintiffs may not obtain a jury trial, 28 U.S.C. § 2402, or punitive damages, 28 U.S.C. § 2674. But the Act does not thereby deprive plaintiffs of due process. *See Hammond v. United States,* 786 F.2d 8, 11–16 (1st Cir.1986) and cases cited; *In re Consolidated United States Atmospheric Testing Litigation,* 820 F.2d 982, 998–92 (9th Cir.1987) and cases cited.

A more difficult question would be presented in a case where the certification of the Attorney General had the effect of depriving a person of any recovery for an injury caused prior to the Act's enactment. As explained above, the Act has had this effect in some instances because 28 U.S.C. § 1346(b) does not permit tort actions against the United States where the claim asserts, for example, assault, battery, false imprisonment, libel, slander or deceit, even though the tortious acts are within the scope of the employment of the Federal employee. Perhaps some Attorney General or his designee might make a wholly arbitrary, even dishonest, determination that the employee was acting within the scope of employment and thus unfairly deprive a plaintiff of his common law claim.

This court need not now reach the question whether in such a case a Federal court would have power to determine whether such a finding of the Attorney General was arbitrary. Section 7 of the Act provides that if the application of any of its provisions is held invalid the application of the remainder of them shall not be affected.

*Martin v. Merriday, supra,* 706 F.Supp. at 45, construed the Act to permit the Federal court to redetermine the Attorney General's finding as to the scope of employment. The court based its holding largely on the premise that to make the Attorney General's certification conclusive would be to raise serious constitutional questions as to delegation of powers.

With respect, this court finds that constitutional concern as to delegation of powers hardly significant. Surely the applicable state bodies of law provide the Attorney General an "intelligible principle" to follow in each case wherever brought. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989).

The other constitutional questions are sufficiently answered in the *Hammond* and *Consolidated* cases, *supra.*

### IV.

The certification by the Attorney General's designee has under the Act the effect of "institut[ing]" the action against the United States pursuant to 28 U.S.C. § 2675(a), and the plaintiffs have presented no claim against the United States with the National Park Service within the meaning of that section. *See O'Neill v. United States,* 732 F.Supp. 1254 (E.D.N.Y.1990). The court therefore dismisses the complaint without prejudice.

As plaintiffs' claim against the United States accrued on January 26, 1987, before the effective date of the Act, and plaintiffs filed their action against McFadden on May 22, 1989, before the expiry of the state statute of limitation, they may within 60 days of this order present a claim against

the United States to the National Park Service. *See* 28 U.S.C. § 2679(d)(5)(B). Upon a denial of the claim by the United States or upon a failure of the United States to act upon it within six months of its presentation, plaintiffs may serve an amended complaint including allegations of compliance with the prerequisites of 28 U.S.C. § 2679(d)(5).

So ordered.